UNITED STATES DISTRICT COURT
FOR THE COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH KELLY ) | |
| Plaintiff, ) | |
| v. ) | DOCKET NO.: 05 10750 REK |
| ) | |
| PAUL DONNELLY, MICHAEL BYERS, SGT. ) | |
| KEITH JACKSON, OFFICER JOHN DOE, in their ) | |
| individual and official capacities, and the TOWN ) | |
| OF ROCKLAND, MASSACHUSETTS, ) | |
| ) | |
| Defendants. ) | |

### DEFENDANTS' MEMORANDUM OF LAW IN
### SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the defendants Paul Donnelly, Michael Byers, Keith Jackson and the Town of Rockland submit this Memorandum of Law in support of their accompanying Motion for Summary Judgment as to the claims of the plaintiff, Deborah Kelly, for excessive use of force, negligence, negligent supervision and violation of 42 U.S.C., § 1983.

### INTRODUCTION

This case arises from a longstanding dispute between the plaintiff's companion, George Stoddard ("Stoddard"), and Stoddard's neighbor Louis Rubbo ("Rubbo") regarding the ownership of a strip of land located between their two lots. (Statement of Facts, ¶ 3) (hereinafter referred to as "SOF"). This dispute resulted in a significant number of altercations between Stoddard and Rubbo, many of which required intervention by members of the Rockland Police Department. (SOF, ¶ 4).

Kelly's claims arise specifically from one such incident that took place on April 21, 2002.

On that date, the Rockland police officers were summoned by Rubbo to intervene in a dispute between Rubbo and Stoddard over the parking of Kelly's pickup truck in the portion of the driveway adjacent to Rubbo's house. (SOF, ¶¶ 5-12) According to the defendant police officers, after Kelly was informed that her truck would be towed if she did not move it, Kelly backed up the truck in a reckless manner and struck one of the officers. (SOF, ¶¶ 13-16)[1]  After being told by the Defendant, Officer Donnelly, that she was to be placed under arrest and instructed to get out of the truck, Kelly failed to comply and remained in the truck. (SOF, ¶¶ 16-17). Officer Donnelly then broke the driver's side window of Kelly's truck so that he could unlock the door and apprehend Kelly. (SOF, ¶¶18). Kelly then exited from the passenger side and ran into Stoddard's house and closed the door. (SOF, ¶ 20). The defendant officers pursued Kelly, opened the door and entered the house. (SOF, ¶ 21). The officers then physically seized Kelly, and, according to Kelly, "put[] her to the ground [ ] banging her head on the floor." (SOF, ¶ 22). Kelly resisted the officers' efforts to handcuff her, but the officers eventually succeeded in handcuffing and arresting her. (SOF, ¶ 23, 28)[2] Kelly claims that, after she was arrested and handcuffed, the officers lifted her off the ground to her feet, causing her shirt to be pushed or pulled up, exposing her breasts. (SOF, ¶ 24). Someone, whose identity was unknown to Kelly, pulled her shirt down to cover her breasts. (SOF, ¶ 25).

As a result of this course of events, Kelly has brought claims against the individual

---

[1] While Kelly denies that she struck the officer with her truck, this factual disagreement is irrelevant to the merits of the defendants' motion for summary judgment.  Even if the arrest was unlawful - which the defendants deny - Massachusetts, as in the majority of jurisdictions, has abolished the common-law right to resist an unlawful arrest where, as here, the attempted arrest occurs before the application of alleged excessive force. Commonwealth v. Moreira, 388 Mass. 596 (1983).

[2] Kelly was convicted in Hingham District Court of resisting arrest and, as will be discussed below, is therefore collaterally estopped from denying that she resisted arrest.

officers, alleging a violation of her rights under the Fourth Amendment in violation of 42 U.S.C., § 1983; against Jackson, alleging negligent supervision and a separate § 1983 violation; against the individual officers alleging state tort claims; and against the Town, pursuant to the *Monell* doctrine, for allegedly failing to adequately train its police officers regarding the use of force and/or tolerating instances of excessive force by officers in violation of § 1983.

As set forth below, the undisputed facts of the case preclude Kelly from recovering on any of the causes of action she has asserted. Her claims against the individual officers for excessive force and negligent supervision in violation of § 1983 are precluded by the fact that, under the qualified-immunity doctrine, the officers did not exercise such an excessive or unreasonable level of force upon Kelly so as to violate clearly-established constitutional prohibitions. Further, if the excessive force claims are barred, the common law negligence claim also must fail because it is nothing more than a restatement of the excessive force claim set forth with negligence terminology. Finally, Kelly's sole cause of action against the Town, for failing to train its officers adequately regarding the use of force and/or tolerating officers' exercise of excessive force, in violation of § 1983, is fatally flawed under the *Monell* doctrine because Kelly can cite no evidence whatsoever that the Town has effectively adopted any custom or practice that would amount to a deliberate indifference to citizens' constitutional rights.

## FACTS

The specific facts on the basis of which the defendants seek summary judgment are set forth in their accompanying Statement of Undisputed Material Facts, which is incorporated here by reference.

## SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "The role of summary judgment is to look behind the facade erected by the pleadings and assay the parties' proof in order to determine whether a trial will serve any useful purpose." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). A party seeking summary judgment must make a preliminary showing that no genuine issue of material fact exists. Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995). Once the movant has made such a showing, the nonmovant must point to specific facts demonstrating that there is, indeed, a trialworthy issue. Id.

A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000), and a "genuine" issue is one supported by such evidence that "a 'reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 1 (1st Cir. 1999) (quoting Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996)). "[C]onclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

Under these standards, as there is no genuine factual issue in this case that requires resolution by a factfinder at trial, summary judgment should be granted in full to the defendants.

# ARGUMENT

## I. THE INDIVIDUAL DEFENDANTS ARE PROTECTED FROM § 1983 LIABILITY UNDER THE DOCTRINE OF QUALIFIED IMMUNITY

Despite the application of some amount of force to arrest Kelly, the individual officers are protected from liability under § 1983 pursuant to the doctrine of qualified immunity.[3] Under this doctrine, "the police in their arrest and detention functions are normally 'shielded from liability for civil damages' under federal law insofar as their conduct does not violate 'clearly established' rights of which 'a reasonable person would have known.'" Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The application of this doctrine has been characterized as "not a stringent test." Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992). The doctrine is intended to give government officials "ample room for mistake in judgments," Lowinger v. Broderick, 50 F.3d 61, 65 (1st Cir. 1995), and extends "so broadly that 'all but the plainly incompetent or those who knowingly violate the law'" enjoy its protection. Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir. 1995) (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). Therefore, "[a] reasonable although mistaken conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." Id.

The qualified immunity analysis consists of three inquiries: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at

---

[3] To establish a claim under § 1983, Kelly must prove: "(i) that the conduct complained of has been committed under color of state law, and (ii) that the conduct worked a denial of rights secured by the Constitution or laws of the United States." Collins v. Nuzzo, 244 F.3d 246, 250 (1st Cir.2001). The defendants will stipulate that they were acting under color of state law. Therefore, the court need only determine whether the second element has been established.

issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Limone v. Condon, 372 F.3d 39, 44 (1st Cir.2004). See also Burke v. Town Of Walpole, 405 F.3d 66, 77 (1st Cir. 2005).[4] Under ordinary circumstances, the development of the doctrine of qualified immunity is best served by approaching these inquiries in sequence. Cox v Hainey, 391 F.3d, 25, 30 (1st Cir. 2004). On summary judgment, then, the threshold question is whether "all the uncontested facts and any contested facts looked at in the plaintiff's favor" allege a constitutional violation. Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 62 (1st Cir. 2004). It is the plaintiff's burden to demonstrate that the law governing the conduct at issue was clearly established on the date of the alleged infraction.

The entitlement to qualified immunity should be resolved, whenever possible, before trial, see Roy v. City of Lewiston, 42 F.3d 691, 694 (1st Cir. 1994) (citing Hunter, 502 U.S. 224), because it is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "The privilege is 'an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'" Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (quoting Mitchell, 472 U.S. at 526).

---

[4]Courts sometimes treat the qualified immunity analysis as a two-step test by combining the second and third prongs to ask whether "the contours of [the constitutional] right are 'clearly established' under then-existing law so that a reasonable officer would have known that his conduct was unlawful." See Santana v. Calderon, 342 F.3d 18, 23 (1st Cir.2003); Burke v. Town Of Walpole, 405 F.3d 66, 77 (1st Cir. 2005). Whether the "two-step" or "three-step" analysis is applied, the elements and outcome remain the same.

> **A.     The defendant officers did not violate the plaintiff's rights under the fourth amendment to be free from excessive force.**

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of a[] . . . 'seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . . " Graham v. Connor, 490 U.S. 386, 395 (1989). A court must carefully balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting U.S. v. Place, 462 U.S. 696, 703 (1983)). "' Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Graham, 490 U.S. at 396 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (1973)).

Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application ... its proper application requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." Graham, 490 at 396. Reasonableness is an objective standard, and in determining whether the individual officers' actions were objectively reasonable, it must be remembered that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97. In other words, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Jarrett v. Town

–7–

of Yarmouth, 331 F.3d 140, 148 (1st Cir. 2003), citing Graham, 490 U.S. at 396. In the context of claims of police misconduct, particularly those involving alleged excessive force, it is well established that courts must "surround the police who make on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases." Roy v. Inhabitants of City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994). See also Hegarty v. Somerset County, 53 F.3d 1367, 1373 (1st Cir.), *cert. den.*, 516 U.S. 1029 (1995) (stating that "the qualified immunity analysis . . . allows as well for the inevitable reality that law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is [constitutional]").

       1.     <u>The officers' use of force was reasonable.</u>  Application of this analytical framework establishes that the plaintiff cannot demonstrate a constitutional violation. Officer Donnelly advised Kelly that she was under arrest based upon his belief that she struck him with her car while recklessly backing out of the driveway. (SOF, ¶ 16). Failing to obey Officer Donnelly's instructions to exit the car, Kelly instead jumped out of the passenger door and ran into Stoddard's house, shutting the door behind her. (SOF, ¶ 20). Stoddard joined her inside the house. (SOF, ¶ 19). The defendant officers followed Kelly inside the house for the purpose of arresting her. (SOF, ¶ 21). Once inside the house, Kelly claims that the officers "put" her on the ground, banging her head on the floor. (SOF, ¶ 22). The officers then wrestled to restrain Kelly when she did not cooperate, whether intentionally or unintentionally, with their efforts to handcuff her. (SOF, ¶ 23).[5] Finally, after handcuffing Kelly, the officers lifted her to her feet,

---

[5] The defendants claim that Kelly resisted their efforts to place her in handcuffs. Kelly claims that she could not respond because her hands were caught beneath her body. For purposes of summary judgment analysis, the disputed facts on this issue are not material. Whether Kelly intentionally or unintentionally failed to comply, the operative focus is on the officer's perception as to the amount of force required to place Kelly into handcuffs. Furthermore, Kelly was ultimately convicted of resisting arrest. (SOF, ¶ 30).

during which time Kelly claims that her shirt was pushed or pulled up, exposing her breasts. (SOF, ¶ 24). Under these circumstances, the officers' conduct must be found to be reasonable as a matter of law.

Application of the Graham factors establishes reasonable police conduct under the circumstances. Kelly's involvement in this dispute was initiated when she drove her car in such a way that Officer Donnelly believed that he was struck by the mirror. While Kelly denies that she struck the officer - and, in fact, was ultimately acquitted of assault and battery upon a police officer - this does not undermine the defendants' summary judgment argument. It is undisputed that, when Officer Donnelly believed that he had been struck, he told Kelly that she was under arrest and directed her to get out of her vehicle. Kelly's belief that she did nothing wrong does not excuse her refusal to follow the officer's direction, nor justify her fleeing from the officers and resisting the officers' attempts to arrest her. Based upon the officers' perception at the scene, Kelly had committed a serious offense, namely, assault and battery upon a police officer, and was not only refusing to follow their directions but was also fleeing from the scene. An objective evaluation of Kelly's conduct suggests that it was reasonable for the officers to believe that Kelly was a threat to their safety. Particularly where Kelly fled to a position inside the house where she was joined by her companion, Stoddard, it was also reasonable for the police to discern a necessity to immediately take Kelly into custody by the application of reasonable force, especially where Kelly was resisting their efforts to complete the arrest. When a fleeing suspect enters a building, even momentarily out of the sight of the police officers, the officers cannot be expected to know the suspect's intentions nor whether a weapon is about to be introduced into the affray. Under such circumstances, it is the officers' obligation to immediately subdue the

suspect.

It is well established under Massachusetts law that a police officer who is seeking to make a valid arrest has the right to use that level of force that is "reasonably necessary to overcome physical resistance by the person sought to be arrested." Julian v. Randazzo, 380 Mass. 391, 396 (1980). In this case, the force used by the officers was certainly reasonable. By Kelly's own admissions, they did not strike her with their hands or fists or batons; rather, the force was limited to that which was physically necessary to force her to the ground where she could be better controlled, followed by the additional force necessary to handcuff her.[6]

2. Kelly is estopped from claiming that she was not resisting arrest.

Following a trial in Hingham District Court, Kelly was convicted of resisting arrest based upon her conduct on April 21, 2002. (SOF, ¶ 30). As a result of her criminal conviction for resisting arrest, Kelly is now estopped from claiming that she was not physically resisting the officers' attempts to arrest her.

"It is now well accepted law that 'a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution.'" City of Marlborough v. DeKroon, 1994 W.L. 902938 (Mass.Super.), citing Aetna Casualty & Surety Co. v. Niziolek, 395 Mass. 737, 742 (1985). Application of the doctrine of collateral estoppel to a civil action following a

---

[6] Kelly's claim that her breasts were exposed during the arrest does not change the analysis. Kelly does not allege that the officers intentionally lifted her shirt. Rather, she states that, "the officers lifted Kelly up off the ground after her shirt had been pushed or pulled above her breasts." Complaint, ¶ 18. She further states that, "[w]hen the defendants lifted Kelly up off the ground, they exposed her breasts." Complaint, ¶ 19. If, in fact, Kelly's breasts were exposed, the exposure occurred during the struggle to arrest her. This does not constitute excessive force. Further, Kelly claims that she heard an unidentified officer say, "Whooo," when she was lifted to her feet. Even if this was a response to Kelly's breasts being exposed, Kelly cannot attribute the comments to any of the named defendants and, even if she could, it is not evidence of excessive force.

–10–

criminal prosecution conserves scarce judicial resources, prevents individuals from profiting from their criminal conduct and "perhaps most importantly, prevent[s] the diminution of public confidence in our judicial system that would result if civil juries repeatedly found by a preponderance of the evidence that a convicted criminal defendant had not done something that a criminal jury had found beyond a reasonable doubt that he had done." Aetna Casualty & Surety Co., 395 Mass. at 742.

In order to preclude a party from relitigating an issue, the following questions must be answered affirmatively: (1) was the issue decided in the prior adjudication identical with the one presented in the action in question; (2) was there a final judgment on the merits; and (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication. Id., citing Massachusetts Property Insurance Underwriting Association v. Norrington, 395 Mass. 751, 753 (1985).

In the present case, all three questions can be answered affirmatively. The issue and the parties are identical, and Kelly's conviction is a final judgment under state and federal law. A conviction in a criminal prosecution is considered a final judgment for purposes of the collateral estoppel doctrine. Massachusetts Property Insurance Underwriting Association, 395 Mass. at 754. Even if Kelly's conviction has been appealed, the pendency of an appeal does not affect the treatment of the conviction as a final judgment. Under Massachusetts law, judgment is considered final for purposes of collateral judgment even though an appeal is pending. O'Brien v. Hanover Insurance Company, 427 Mass. 194 (1998); Campos v. Van Houtum, 45 Mass.App.Ct. 918 (1998). Further, "the federal rule is that pendency of an appeal does not suspend the operation of a final judgment for purposes of collateral estoppel, except where

appellate review constitutes a trial de novo." Nixon v. Ricky, 513 F.2d 430, 438 n.75 (D.C.Cir. 1975); IMF Sales Associates, Inc. v. RACAL-VADIC Information Systems, Inc., 94 B.R. 223 (D.Mass.1988).

Therefore, in responding to this motion, Kelly cannot deny that she resisted arrest. Therefore, for purposes of analyzing the reasonableness of the officers' conduct, the Court must consider as a *fact* that Kelly was resisting arrest. Under these circumstances, the use and amount of force applied by the officers was reasonable and not excessive.

**B.     The Plaintiff's Fourth Amendment rights were not clearly established.**

If the Court finds, as argued above, that there has been no constitutional violation, there is no need for further inquiry. However, even should the Court determine that the officers' conduct was unreasonable, the Court must move to the second prong of the qualified immunity analysis to decide whether the plaintiff's constitutional right was clearly established. See Limone v. Condon, 372 F.3d 39, 44 (1st Cir.2004). The inquiry whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. Accordingly, the standard when addressing the question of qualified immunity is that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635 (1987). See also Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct 596 (2004).

The application of qualified immunity is most appropriate when there is a dispute about the proper interpretation of particular actions taken by the party alleging excessive force. For instance in Roy v. City of Lewiston, 42 F.3d 691 (1st Cir. 1994), the police used deadly force against an armed man who they thought was acting erratically. The plaintiff there contended that

-12-

he was about to put down his weapons and, therefore, the police conduct was unreasonable.  In these circumstances, the court would not permit a jury to consider the plaintiff's claim that the situation could have been handled differently – that is, in essence, to second-guess police choices made in a dangerous situation.  Roy, 42 F.3d at 695.  See also Medeiros v. Town of Dracut, 21 F.Supp.2d 82, 87 (D.Mass.1998) ("The question then is not whether [the defendant's] use of deadly force was excessive, but whether it was reasonable for an officer in [the defendant's] position to perceive plaintiff's actions as hostile rather than merely defensive.").

Considering the facts in the best light to the plaintiff, Kelly cannot show that the individual officers' alleged conduct was so plainly in violation of clearly-established constitutional requirements as to waive their entitlement to qualified immunity. The officers' quick action – even if it included, as Kelly claims, forcing her to the floor where she struck her head – to accomplish an arrest is precisely the sort of split-second decision on the part of a law-enforcement officer that the courts should be extremely reluctant to second-guess. See e.g., Jones v. City of Dothan, 121 F.3d 1456 (11th Cir. 1997) (no use of excessive force where police officers slammed plaintiff against wall and kicked his legs apart); Jones v. Webb, 45 F.3d 178 (7th Cir. 1995) (no use of excessive force where chief of police carried boy out of house with one arm around his neck, slapped his hand, pushed him face-first into ground and placed knee into his back to hold him down); Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326 (M.D. Fla. 1999) (no use of excessive force where police officers forcibly twisted plaintiff's arms behind her back and forced her to her knees on concrete floor).  See also Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991) (noting that reasonable nature of force used by police officers in arresting plaintiff was confirmed by minor nature of his injuries, which included a scratch on his

neck, bruises on his back and a cut on his nose).

Moreover, even were the Court to find that the level of force used to arrest Kelly, in retrospect, may have been greater than necessary, this nonetheless does not serve as a basis for denying the officers the benefits of the qualified-immunity doctrine, because the situation must be judged from the eyes of a reasonable officer in their situation, and not from the standpoint of 20-20 hindsight. See Saucier v. Katz, 533 U.S. 194, 204-05 (2001) (holding that even where a police officer is found to have used an unnecessary level of force against a suspect, qualified immunity still may apply, because "reasonable mistakes [could] be made as to the legal constraints" on the police conduct at issue). As stated in Roy, a case where considerably more force was applied, "[t]he police may have done the wrong thing but they were not "plainly incompetent" nor were their actions "clearly proscribed." 42 F.3d at 696, citing Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038 (1987). Cf. Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir.1985) (conduct "at least arguabl[y]" justified). Therefore, the Court should find that, under the circumstances, Kelly's Fourth Amendment rights were not clearly established.

### C. A reasonable officer in the position of the defendants would not have understood the challenged act to contravene a constitutional right.

Again, the defendants submit that the Court must find that the officers' conduct was reasonable, and that, under the circumstances, the plaintiff's Fourth Amendment rights were not clearly established. However, even should the Court disagree, the inquiry must continue to the third prong of the qualified immunity test; that is, whether the defendants objectively should have known that their actions were unconstitutional.

The test for qualified immunity is an objective one. The immunity inquiry focuses not on the official's subjective belief about his conduct, but on whether the belief he held was objectively unreasonable. Orwat v. Maloney, 360 F.Supp.2d 146 (D.Mass.,2005). The third prong of the qualified immunity analysis "channels the analysis from abstract principles to the specific facts of a given case." Cox, 391 F.3d at 31. Because "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct," Saucier v. Katz, 533 U.S. at 205, even where a plaintiff has shown, for purposes of withstanding summary judgment, that a government official may have deprived him of a clearly established constitutional right, qualified immunity remains available to defendants who demonstrate that they acted objectively reasonably in applying clearly established law to the specific facts they faced. Burke v. Town Of Walpole, 405 F.3d 66, 86 (1st Cir. 2005).

Because Massachusetts law allows application of force necessary to effect an arrest, and because it is undisputed that the plaintiff resisted arrest, the plaintiff cannot establish, objectively, that a reasonable officer would have believed that the minimal force applied in this case was excessive or a violation of constitutional rights. Accordingly, summary judgment therefore should be granted to Donnelly, Byers and Jackson as to Kelly's excessive force claim under Count I.

## II. SECTION 1983 CLAIMS AGAINST JACKSON FOR FAILURE TO INTERVENE

Jackson is also entitled to qualified immunity in his supervisory capacity. It is established that "[w]hen a supervisor seeks qualified immunity in a section 1983 action, the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1) the subordinate's

actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." Camilo-Robles, 151 F.3d at 6.

Here, the plaintiff fails to clear the bar on either element. First, as argued above, if the defendant officers' conduct in arresting the plaintiff was not excessive, Jackson cannot be liable for failure to supervise the situation. Second, in the fast-moving situation which was on-going when Jackson arrived, where he observed a fleeing and resisting suspect with his officers in pursuit, Jackson could not reasonably have recognized that a violation of any constitutional import was occurring. Accordingly, Jackson is entitled to summary judgment on Count III.

### III. *MONELL* LIABILITY AGAINST THE TOWN OF ROCKLAND

To establish liability against a municipality under 42 U.S.C. § 1983, the plaintiff bears the burden of showing that a constitutional violation caused her harm and that the municipality is responsible for that violation. See Young v. Providence, 404 F.3d 4 (1st Cir.2005); Crete v. City of Lowell, 418 F.3d 54, 66 (1st Cir. 2005). First, as argued above, a determination that the plaintiff suffered no constitutional injury is dispositive of her municipal liability claim against the Town of Rockland. As the Supreme Court observed in City of Los Angeles v. Heller, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986):

> [N]either *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the [court] has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.

*Id.* at 799, 106 S.Ct. 1571 (original emphasis). Consequently, the plaintiff's municipal liability

claim against the Town of Rockland must fail as a matter of law.  See Jarrett v. Town of Yarmouth, 331 F.3d 140, 151 (1st Cir. 2003).

Second, as a factual matter, Kelly cannot posit any facts to suggest that the Town's acts or omissions caused her alleged injury.  Even if Kelly somehow could show that the individual officers' actions toward her constituted a violation of § 1983, it is well established that the Town cannot be held vicariously liable for the officers' conduct on the basis of *respondeat superior*.  Rather, the Town may be liable to Kelly under § 1983 only if Kelly establishes that the officers' alleged unlawful conduct toward her resulted from the Town's adoption or condonation of a custom or policy constituting a "deliberate indifference" to citizens' constitutional rights.  Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Meehan v. Town of Plymouth, 167 F.3d 85, 92 (1st Cir. 1999); Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).

In an effort to meet this burden, Kelly alleges in her Complaint that the Town has adopted a deliberate policy or practice of failing to train its police officers with respect to the appropriate use of force against citizens, and/or of tolerating the use of excessive force by officers.  Complaint, ¶¶ 77-82.  Kelly, however, can cite absolutely no evidence that the Town actually has adopted or condoned any such policy or practice.  Kelly can offer no evidence that the training provided by the Town to its officers was deficient, nor can she cite any supposed pattern of excessive force on the part of Rockland police officers, or of the Town's alleged toleration of such conduct.

To resist summary judgment, the nonmoving party must produce "definite, competent evidence" on which the nonmovant bears the ultimate burden of proof. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1 Cir., 1991) (citations omitted), *cert. denied,* 504 U.S. 985, 112 S.Ct.

-17-

2965, 119 L.Ed.2d 586 (1992). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1996) (stating that summary judgment must enter "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Orwat v. Maloney, 360 F.Supp.2d 146, 152 (D.Mass.,2005).

Here, the plaintiff can make no such showing and her claims against the Town, set forth in Count IV, must be dismissed as a matter of law. See e.g. Bryant v. Whalen, 759 F.Supp. 410 (N.D.Ill. 1991) (statistics of unsustained complaints of excessive force, without any evidence that those complaints had merit, would not suffice to establish municipal liability).

## IV. STATE LAW NEGLIGENCE CLAIMS

In Count II, Kelly has also raised a common law "negligence" claim against the defendant officers, alleging that they breached a duty by "using an excessive and negligent level of force" toward the plaintiff. Complaint, ¶ 33. While the plaintiff may attempt to frame this allegation as a negligence claim, it is quite obvious that this is merely a restatement of the "excessive force" claim couched in negligence terminology. As argued above, since Massachusetts law allows an officer to make an arrest using necessary and reasonable force, Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir.1991), the officers cannot be found negligent for using reasonable force. Consequently, if the defendant are granted summary judgment on the § 1983 claims, the state negligence claim, set forth in Count II must also be dismissed. See Jesionowski v. Beck, 937 F.Supp. 95, 105 (D.Mass.1996) ("the plaintiff's assault and battery claims will rise or fall in the same manner as his Fourth Amendment claims").

Alternatively, should the Court conclude that only the state law negligence claim

-18-

survives, the Court should exercise its broad discretion to dismiss the pendent state law claim. Newman v. Burgin, 930 F.2d 955, 965 (1st Cir.1991); Lares Group, II v. Tobin, 221 F.3d 41, 45 (1st Cir. 2000).

## Conclusion

For the foregoing reasons, summary judgment should be granted to the defendants on all claims.

Respectfully submitted,
The Defendants
By their attorneys,

PIERCE, DAVIS & PERRITANO, LLP


*/s/ Jeffrey M. Sankey*
Jeffrey M. Sankey, BBO #551062
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950
jsankey@piercedavis.com

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 8, 2006.

*/s/ Jeffrey M. Sankey*
Jeffrey M. Sankey

-19-