IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF MASSACHUSETTS

_____ )
DEBORAH KELLY,                     )
                                   )
          Plaintiff,               )          Case No: 05-10750-RWZ
                                   )
v.                                 )
                                   )
PAUL DONNELLY,                     )
MICHAEL BYERS,                     )
SGT. KEITH JACKSON,                )
OFFICER JOHN DOE, in               )
their individual and               )
official capacities, and           )
THE TOWN OF ROCKLAND,              )
MASSACHUSETTS,                     )
                                   )
          Defendants.              )
_____)

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

The plaintiff appears through her counsel to oppose the defendants' motion for

summary judgment.  Because the essential facts of the case have been spelled out by the

parties' statements of undisputed facts, those facts will not be re-stated here.

KELLY SHOULD NOT BE ESTOPPED
FROM CLAIMING THAT SHE WAS NOT
RESISTING AT THE TIME
EXCESSIVE FORCE WAS APPLIED

There are several problems with the defendants' assertion that Kelly is estopped

from denying that she resisted arrest.

First, only the trial court can determine whether to apply collateral estoppel.  This

decision is committed to the court's "broad discretion." Acevedo-Garcia v. Monroig, 351

F.3d 547, 575 (1st Cir. 2003.)  For reasons explained below, the court should not exercise its discretion as the defendants request.

Second, Kelly did not resist when the officers first came in the door to arrest her. (See, *infra*.)  Carefully examined, the defendants' claim is that when Kelly was already *on the ground*, she was "kicking her feet and clutching her arms in front of her to avoid being handcuffed." (Statement of Facts, pg. 5, fn.2.)  What Kelly did once she was thrown to ground and beaten *might* constitute the "resisting" for which Kelly was convicted.  But it might not.

The truth is that no one knows what the jury decided about whether Kelly resisted ***at the relevant point in time*** because the jury that convicted Kelly of "resisting" was not asked a special interrogatory on *when* or *how* Kelly resisted.  If Kelly resisted at some other point in time, then there was excessive force in (A) throwing her to the floor, (B) slamming her head on the floor at a time when she was not offering any resistance, and (C) in later tightening the handcuffs in such a way as to cut off her circulation without the police providing any relief after Kelly complained about the cuffs being too tight.

A reasonable jury could conclude that slamming Ms. Kelly's head against the floor amounted to excessive force under all of the known facts. (See, *infra.*) The available case law also suggests that the officers would enjoy no qualified immunity doing so. (See*, infra.*)

1. No One Knows How or When She "Resisted"

The jury found Deborah Kelly guilty of resisting arrest.  But the verdict form contained no special interrogatories as to *how or when* she resisted arrest. (Exhibit 1; Affidavit of Daniel S. Sharp.)  There are numerous points in the timeline of events where the jury could have concluded that Kelly resisted arrest.  Absent special interrogatories,

however, no one can know whether the jury believed that Kelly resisted arrest inside the doorway when she was thrown to the ground, or at some other time or times. Kelly denies that she resisted arrest *at the time pertinent to her claims*.

a. Timeline

The defendant-officers arrived with a bellicose attitude. Officer Somers said with eloquence that, "We are tired of your [Stoddard's] fuckin' shit." (Exhibit 2; Somers Deposition Transcript (" DT"), pp. 36, 38.) The "fuckin' shit" to which Somers referred was, "Just going to the house all the time, having cruisers there all the time" (Exhibit 2, pg. 36) and Rubbo and Stoddard calling the police on one another (Exhibit 2, pg. 38).

Officer Somers was the second officer inside the Stoddard household. As soon as Defendant-Somers came into Stoddard's home, Somers hit Stoddard in the face and slammed him to the ground over a bookcase. (Exhibit 3; Stoddard DT., pg. 49). The blow to the face was "instantaneous" upon the officers' entry.[1] (Exhibit 3, pg. 52.)

The other officers devoted their attention to Ms. Kelly. (Exhibit 2; Somers Deposition, pp. 21-22.)

Before the entry into the house, however, came the events on or about Mr. Rubbo's claimed driveway, the events surrounding Kelly driving onto Stoddard's lawn, and the events occurring on Stoddard's lawn.

Before her truck moved, Kelly had refused to move her vehicle. The police told Kelly that she was under arrest. (Exhibit 4; Trial Transcript, 1/27/2003 ("TT"), Stoddard, pg. 228, 252.) The jury could have considered this the event of "resisting."

As her truck was about to move, an officer came up to the vehicle and said, "Get out of the truck. You're under arrest." (Exhibit 4, TT, Stoddard, pg. 229, 253.) Kelly did

_____

[1] The Town paid money to Stoddard in settlement of his Section 1983 claim.

not get out of her truck.  She started to back it up. (Id.)  The jury could have considered
this the event of "resisting."

      After she backed up, Kelly was again told, "Get out of the truck." (Exhibit 4, TT,
pg. 230).  She did not do so.  The jury could have considered this the event of "resisting."

      Kelly then drove onto Stoddard's lawn and was told to get out of the truck and
that she was under arrest. (Defendants' Statement, para. 16; Exhibit 4, TT, Stoddard, pp.
228-231, 256; Exhibit 5; Officer Donnelly's report, pg. 2.)  Kelly did not exit the truck.
(Defendants' Statement, para. 17; Exhibit C, pg. 19.)  The jury could have considered this
to be the event of "resisting."

      Officer Donnelly then smashed Kelly's driver-side window. (Defendants'
Statement, para. 18; Exhibit C, pp. 19-20.)

      Donnelly's smashing of the window sprayed glass all over Kelly. (Exhibit 4, TT,
Kelly, pg. 283).  Kelly then exited her truck through the passenger-side door and ran into
Mr. Stoddard's house. (Defendants' para. 18; Exhibit 4, TT. Stoddard, pg. 236.)  The jury
could have considered this to be the event of "resisting."

      In sum, there are at least five points at which the jury may have concluded that
Kelly resisted arrest before the officers got to the front door of Stoddard's house.  We
cannot know whether the jury convicted Kelly of resisting arrest at one or more of these
five points in time.  Nor can we know that she was convicted of resisting inside
Stoddard's house.

      The officers entered the house, apparently in pursuit of Kelly. (Defendants'
Statement, para. 21; Exhibit 4, TT, Stoddard, pp. 237-238.)  When the officers entered the

house, Kelly did nothing to resist them or to resist being placed under arrest. (Exhibit 4, TT, Kelly, pg. 284-285; 303-304.)

2. On These Facts, Collateral Estoppel Does Not Apply

The First Circuit has held that to "establish collateral estoppel, the following factors must be present:

> (1) an identity of issues (that is, that the issue sought to be precluded is *the same* as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was *essential to the final judgment or order*)."

> Gonzalez-Pina v. Guillermo Rodriquez, 407 F.3d 425, 430 (1st Cir. 2005.) (Emphasis added.)

Ms. Kelly denies that she ever resisted arrest. Today, the gravamen of Ms. Kelly's Complaint is the event that occurred inside the threshold of the Stoddard house at a time when she says she did nothing to resist arrest. (Exhibit 4, TT, Kelly, pg. 284-285; 303-304.) This (along with the hand-cuffing issue) is the *specific point in time* at which Kelly claims she was subjected to excessive force.

It is simply not possible to tell whether the jury had that specific point in time in mind when it decided that she had resisted arrest. There were at least five different events that could have been considered "resisting" and upon which the jury could have based its guilty verdict. Thus, it cannot be said that there was "(1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding)" as required by First Circuit precedent. We simply don't know whether the issue that was decided was "the same as that … involved in the prior proceeding."

Nor can it be said that the specific testimony that the defendants' seek to estop was "*the issue* … determined by a valid and binding final judgment or order." The jury may have seen Kelly's behavior at another point in time as "the issue" determining that she resisted.[2] We cannot know.

Nor can it be said with any degree of certainty that "the determination of the issue in the prior proceeding was essential to the final judgment or order." If the jury found that Kelly resisted arrest at any of the five alternative points where they may have done so, then determining whether she resisted arrest during the first moments inside the house would not be "essential to the final judgment or order." The "centrality" requirement of collateral estoppel is not satisfied.

Plaintiff-Deborah Kelly should not be estopped from denying that she was resisting arrest at the time pertinent to her claims. To deny the offensive use of collateral estoppel would be consistent with the requirements of First Circuit law. It was also fair because the defendants can at least try to have the guilty finding introduced by way of impeachment.[3]

Excessive force was applied to Deborah Kelly at a particular point in time. Since there has been no adjudication of what happened at that particular point in time, collateral estoppel should not be allowed to apply.

## THE EXCESSIVE USE OF FORCE DOES NOT INVOKE QUALIFIED IMMUNITY

The defendants use an array of theories to claim qualified immunity, all of which should be rejected.

---

[2] Recall that Kelly was charged with assault and battery with a dangerous weapon. (Defendants' Undisputed Facts, para. 29.) That "weapon" was her truck. It seems more likely than not that the jury believed that Kelly did something with her truck to resist arrest, rather than resisting arrest in the doorway.
[3] The plaintiff does not, through this argument, agree that the conviction should be allowed into evidence.

First, they claim that Kelly was dangerous because she backed her truck into Officer Donnelly.  Kelly denies this, as did the jury that acquitted her of this charge. (Exhibit 6; Affidavit of Deborah Kelly.)  Whether this occurred and whether Kelly posed any danger to the officers is a question of fact.

Second, the defendants claim that they "wrestled to restrain Kelly *when she did not cooperate.*" (Defendants' Brief, pg. 8.)  But Kelly denies that she ever did anything to resist arrest and never failed to cooperate inside the door of Stoddard's house. (Exhibit 4, TT, Kelly, pg. 284-285; 303-304.) (Exhibit 6; Affidavit of Deborah Kelly.)  If that is accepted as true, as it must be for purposes of the extant motion, then minimal force or no force at all was the amount of force that was necessary and reasonable.  Slamming Kelly's head into the floor was not reasonable.  No officer could believe otherwise.

This is particularly true where, as in this case, the defendants confronted their single suspect with the overwhelming force of five police officers.  Although the defendants try to paint Kelly as a threat because she was with Stoddard, Stoddard had already been punched in the face and taken to the ground by Officer Somers.

Kelly was not armed.  She offered no resistance.  Although the police had been to the Stoddard/Rubbo area over 30 times, neither Stoddard nor Kelly had ever been arrested or charged with any offense. (Exhibit 6; Kelly Affidavit.)

Slamming a non-resistant arrestee's head into the floor multiple times is objectively unreasonable. Tarver v. City of Edna, 410 F.3d 745, 753 (5th Cir. 2005) (slamming head with door); Slicker v. Jackson, 215 F.3d 1225, 1232-33 (11th Cir. 2000) (denying qualified immunity -- without particularized precedent -- to officers who slammed arrestee's head into pavement); Lee v. Ferraro, 284 F.3d 1188, 1199 (11th  Cir.

2002) (denying qualified immunity -- without particularized precedent -- in excessive force case where officer slammed arrestee's head on car trunk after "she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed"); Johnson v. Wright, 2005 U.S. Dist. LEXIS 32286 (D. Ala. 2005) (using foot to slam arrestee's head into floor); Timas v. Klaser, 2000 U.S. Dist. LEXIS 7502 (D. Ind. 2000.)

The defendants also try to invoke qualified immunity by claiming that Kelly's injuries were not severe.  This is a question of fact. (See, Exhibit 6; Affidavit of Deborah Kelly.)  Moreover, "objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe physical harm.  Slamming the head of a handcuffed, subdued arrestee against the trunk of a car is objectively unreasonable and clearly unlawful." Lee v. Ferraro, 284 F.3d 1188, 1200 (11th Cir. 2002.)

In Terrell v. Village of Univ. Park, 1994 U.S. Dist. LEXIS 894 (D. Ill. 1994), a police officer who slapped an arrestee in the back of the head and slammed him against a police car was denied qualified immunity despite any significant injury.  The court explained:

> Although absence of injury is one factor to be weighed in determining whether excessive force was used, it is not a necessary factor. Meyer v. Robinson, 992 F.2d 734, 739 (7th Cir. 1993).  The central inquiry is whether the use of force was reasonable. Graham v. Connor, 490 U.S. 386, 395, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989).  The presence of injury to the plaintiff is part of that inquiry, not the answer.

1. Significant Injury is Not Required

The defendants allege that Kelly cannot sustain her excessive force claim because she did not sustain a significant injury.  This proposition was disposed of by the Supreme

Court in the Eighth Amendment case of <u>Hudson v. McMillian</u>, 503 U.S. 1, 117, 112 S.

Ct. 995 (1992).  The Court has subsequently explained that, "Hudson held that to sustain

a claim of excessive force, *a prisoner need not show significant injury*. 503 U.S. at 9.  In

so ruling, the Court did indeed distinguish excessive force claims from 'conditions of

confinement' claims; to sustain a claim of the latter kind 'significant injury' must be

shown. Id., at 8-9. Hudson." <u>Porter v. Nussle</u>, 534 U.S. 516, 528 (2002). (Emphasis

added.)

 <u>Hudson</u> and <u>Porter</u> were Section 1983 prisoner cases brought under the stringent

requirements of the Eighth Amendment.  It would be odd for an arrestee to be required to

prove more injury than a convicted felon in order to sustain a Section 1983 action.

 Citing <u>Hudson</u>, the First Circuit has held that it is not necessary to claim a

"significant injury" to assert a Fourth Amendment "excessive force" claim.  The court has

held:

> That view is widely held. See, e.g., <u>Kostrzewa v. City of Troy</u>, 247 F.3d
> 633, 639 (6th Cir. 2001) (excessive force claims can be maintained
> regardless of whether injuries "left physical marks or caused extensive
> physical damage," including, as in that case, ***when individual's wrists are
> cuffed too tightly***); <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 314 (5th Cir.
> 2001); n7 <u>Headwaters Forest Defense v. County of Humboldt</u>, 240 F.3d
> 1185, 1199 (9th Cir.), vacated and remanded on other grounds by 151 L.
> Ed. 2d 1, 122 S. Ct. 24 (2001) ("Whether the use of force poses a risk of
> permanent or significant injury is a factor to be considered in evaluating
> the need for the force used in a particular case - but it is certainly not
> dispositive."); <u>Lambert v. City of Dumas</u>, 187 F.3d 931, 936 (8th Cir.
> 1999) (circuit has rejected the "significant injury" requirement for
> excessive force claims, requiring instead "actual injury"); <u>Rambo v. Daley</u>,
> 68 F.3d 203, 207 n.2 (7th Cir. 1995) (significant injury not required for
> Fourth Amendment excessive force claims); <u>Wardlaw v. Pickett</u>, 303 U.S.
> App. D.C. 130, 1 F.3d 1297, 1304 n.7 (D.C. Cir. 1993) (severity of injury
> a "relevant factor," but "we do not suggest that an individual must suffer
> significant injuries in order for the force used to be unreasonable").

> <u>Bastien v. Goddard</u>, 279 F.3d 10, 14-15 (1st Cir. 2002). (Emphasis added.)

There is no requirement in First Circuit law that the plaintiff's injuries be significant or require medical attention.  Any suggestion to the contrary ignores well-established law.

2. There is Evidence of a Non-Law Enforcement Reason for Force

If the officers inflicted injury out of personal animus or simply frustration, as a jury might reasonably conclude after hearing "We're tired of your fuckin' shit," their actions were gratuitous and violated clearly established law.  The Fourth Circuit has explained that, "Both before and after November 1999, courts have consistently applied the Graham holding and have consistently held that officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." Bailey v. Kennedy, 349 F.3d 731, 744-745 (4th Cir. 2003). (Emphasis added.)

In an Eighth Amendment case, the Sixth Circuit held:

> [E]ven this de minimis use of force against Plaintiff was "repugnant to the conscience of mankind" *because Defendant struck Plaintiff out of anger and frustration* in a situation where all parties admit that force was not necessary…  In this Court's view, even one slap against a prisoner is objectively unreasonable and "repugnant to the conscience of mankind" when, as here, the prisoner presents no threat to prison guards or others, poses no security risk, and does not otherwise pose a danger to himself."
>
> Dixon v. Campbell, 58 Fed.Appx. 180, 183, 2003 WL 839303, **3 (6th Cir. 2003) (unpublished). (Emphasis added.)

### STATE LAW NEGLIGENCE CLAIMS
### SHOULD NOT BE DISMISSED

Under Massachusetts law, "a police officer who is seeking to make a valid arrest has the right to use that level of force that is 'reasonably necessary to overcome physical

resistance by the person sought to be arrested,'" <u>Julian v. Randazzo</u>, 380 Mass. 391, 396 (1980).

The defendants were negligent in the manner in which they arrested Kelly because they used more force than was "reasonably necessary." There was no "physical resistance" to be overcome.

It was negligent of the officers to slam Kelly's head into the floor at a time when she was not resisting arrest. The officers had a duty not to do so. They breached that duty. Injury resulted. The elements of negligence are all present. Genuine issues of material fact are also present.

<u>RELIEF REQUESTED</u>

For the reasons of fact and law set forth in this brief and its related exhibits, the plaintiff requests that:

(1)     The court deny the defendants' motion for summary judgment; and

(2)     Grant such other relief as is just and equitable under the circumstances.


Respectfully Submitted,



   __/s/ Daniel S. Sharp_____
Daniel S. Sharp (BBO 565524)
Attorney for Plaintiff
48 Locust Street
Marblehead, MA  01945
781-639-1862

CERTIFICATE OF SERVICE

The undersigned certifies that he/she caused a true copy of the document above to served by ECF or by first class mail, postage paid, and properly addressed on all counsel of record and upon all parties appearing *pro se* on February 14, 2006.


  /s/ Daniel S. Sharp